CASE NO. 23-5384

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————

BAILEY WHITE,
as Administrator of the Estate of Shandle Riley, deceased
*Plaintiff – Appellee*

~v~

HAMILTON COUNTY, TN GOVERNMENT; JACOB GOFORTH,
In his individual and official capacity as a
Deputy Sheriff of Hamilton County Government
*Defendants*

DANIEL CAMERON WILKEY,
In his individual and official capacity as a
Deputy Sheriff for Hamilton County Government
*Defendant-Appellant*

**On interlocutory appeal from the United States District Court for
the Eastern District of Tennessee at Chattanooga
No. 1:19-cv-304**

**Hon. Travis R. McDonough**

————————

# APPELLEE BAILEY WHITE'S BRIEF

————————

**ROBIN RUBEN FLORES**               **ANDREW C. CLARKE**
**TENN. BPR #20751**                 **TENN. BPR #15409**
**GA. STATE BAR #200745**            Counsel for Bailey White
Counsel for Bailey White             One Commerce Square
4110-A Brainerd Road                 Suite 1700
Chattanooga, TN  37411               Memphis, Tennessee 38103
423 / 267-1575  fax 267-2703         (901) 523-1222

# ORAL ARGUMENT REQUESTED

**CORPORATE DISCLOSURE STATEMENT**

No corporate disclosure statement is required of White as she is not a corporate party. See Fed. R. Civ. P. 26.1(a). See also ROA-7 (White's Corporate Disclosure Statement).

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . . . . . . . ix

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    (I)     JURISDICTION: THE TRIAL COURT'S RULING IS NOT APPEALABLE SINCE IT WAS BASED ON MATERIAL FACTUAL DISPUTES. . . . . . . . . . . 20

    (II)    WILKEY'S COLOR OF LAW ARGUMENT: WILKEY HAS WAIVED THIS ISSUE SINCE HE RAISED IT FOR THE FIRST TIME IN THIS COURT, AND HE HAS ADMITTED IN HIS AMENDED ANSWER THAT HE ACTED UNDER COLOR OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    (III)   STANDARD OF REVIEW: IF THE COURT ACCEPTS JURISDICTION, THE STANDARD OF REVIEW IS *DE NOVO*. . . . . . . . . . . . . . . . . . . . . . . . 26

    (IV)   CONSTITUTIONAL VIOLATIONS: WILKEY VIOLATED RILEY'S RIGHTS UNDER THE FIRST AMENDMENT AND THE FOURTH AMENDMENT (SEIZED FOR PURPOSE OF BAPTISM). . . . . . . . . . . . . . . 28

        a.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        b.   *Clearly Established Law and First Amendment Violation*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

     *c.* *Clearly Established Law and the Fourth Amendment Violation (Seizure for Purpose of Baptism)* . . . . . . . . . . . . . 31

  (V) C<small>ONSTITUTIONAL</small> V<small>IOLATIONS</small>: W<small>ILKEY</small> V<small>IOLATED</small> R<small>ILEY'S</small> R<small>IGHTS</small> U<small>NDER THE</small> F<small>OURTH</small> A<small>MENDMENT</small> – U<small>NREASONABLE</small> S<small>EARCH OF</small> R<small>ILEY'S</small> P<small>ERSON</small>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

ADDENDUM: DESIGNATED DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

## CASES                                                                    PAGE

*Anderson v. Creighton,*
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 29

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Ashcroft v. Al-Kidd,*
    131 S. Ct. 2074 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Behrens v. Pelletier,*
    516 U.S. 299 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Berryman v. Rieger,*
    150 F.3d 561 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

*California v. Hodari D.,*
    499 U.S. 621 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Campbell v. City of Springboro, Ohio,*
    700 F3d 779 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Campbell v. Mack,*
    777 F. App'x 122 (6th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 33

*Camreta v. Greene,*
    131 S.Ct. 2020 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Chappel v. Montgomery Country Fire Protection Dist. No. 1,*
    131 F.3d 564 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Colvin v. Caruso,*
    605 F.3d 282 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Cummings v. City of Akron*,
  418 F.3d 676 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Goodwin v. City of Painsville*,
  781 F.3d 314 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hearring v. Sliwowski*,
  712 F.3d 275 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hope v. Pelzer*,
  536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Fifth Third Bank v. Lincoln Fin. Sec. Corp.*,
  453 F. App'x 589 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Fox v. DeSoto*,
  489 F.3d 227 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Goodwin v. City of Painsville*,
  781 F.3d 314 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hope v. Pelzer*,
  536 U.S. 730 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Johnson v. Jones*,
  515 U.S. 304 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18, 20, 21

*Kennedy v. Bremerton Sch. Dist.*,
  142 S.Ct. 2407 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Kostrzewa v. City of Troy*,
  247 F.3d 633 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Leary v. Livingston Cnty.*,
   528 F.3d 438 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lee v. Weisman*,
   505 U.S. 577 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Levan v. George*,
   604 F.3d 366 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Marrero-Mendez v. Calixto-Rodriguez*,
   830 F.3d 38 (1st Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Martin v. City of Broadview Heights*,
   712 F.3d 951 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*Middlebrooks v. Parker*,
   22 F.4th 621 (6th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Miller v. Sanilac Cty.*,
   606 F.3d 240 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21, 22

*Nat'l Satellite Sports, Inc. v. Eliadis Inc.*,
   253 F.3d 900 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ortiz v. Jordan*,
   131 S. Ct. 884 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pearson v. Callahan*,
   555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

vi

*Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*,
    640 F.3d 716 (6th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Romo v. Largen*,
    723 F.3d 670 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Scottsdale Ins. Co. v. Flowers*,
    513 F.3d 546 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Singleton v. Wulff*,
    428 U.S. 106 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Smith v. Jefferson Cnty. Bd. of Sch. Com'rs*,
    788 F.3d 580 (6th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Summers v. Leis*,
    368 F.3d 881 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Mendenhall*,
    446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. Ward*,
    756F. App'x 560 (6th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Zorach v. Clauson*,
    343 U.S. 306 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## CONSTITUTION OF THE UNITED STATES

Amendment I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Amendment IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATUTES AND RULES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. App. P., Rule 28(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TENN. CODE ANN. § 8-8-302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TENN. CODE ANN. § 29-20-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Notwithstanding Appellee Bailey White's ("White")[1] contention that this Court does not have jurisdiction over this appeal (to be argued further), Appellant Daniel Wilkey ("Wilkey") claims in his principal brief that his seizure of Riley ended and thus the baptism was not a clearly established seizure. Wilkey then appears to argue an alternative theory that at the time of the baptism that "it was not clearly established that an on-duty police officer baptizing a 'willing' citizen was a constitutional violation" while arguing that he was not acting under color of law when he baptized Riley.

However, Wilkey ignores the fact that the District Court ("trial court") correctly observed that the unconstitutional nature of his conduct was "so patently evident that no particular case – and certainly not one directly on point – need to have existed to put a reasonable officer on notice of its unconstitutionality." (Memorandum Opinion, RE 682, PageID #: 10053-54). Further, Wilkey also ignores his "search" of the deceased, Shandle Marie Riley ("Riley") at the King residence and his baptism of Riley in a cold lake were caught on video, and these videos more than created

---

[1] Riley passed away during the pendency of this matter in the trial court. (Suggestion of Death, RE 503, PageID #: 4039-40). The magistrate judge entered an Order substituting The Estate of Shandle Marie Riley, through its Administrator, Bailey White as the real party in interest. (Order, RE 578, PageID #: 5880).

issues of fact for a jury to consider. Together with the video evidence, White believes

that oral argument can assist this Honorable Court in rendering a decision.

x

## STATEMENT OF JURISDICTION

White, as argued in this brief, respectfully contests this Court's jurisdiction to hear this appeal. However, and without waiving her jurisdictional challenge, White responds to Wilkey's substantive argument from an abundance of caution. Additionally, to comport with FED. R. APP. P., Rule 28(a)(4), White states:

This Court has jurisdiction to review on interlocutory appeal a denial of qualified immunity claims, and the Court's jurisdiction lies only to the extent that the denial turns only on issues of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). There is no appellate jurisdiction to review a denial of an immunity claim *where the denial turns on factual issues*. *See Johnson v. Jones*, 515 U.S. 304, 313-18 (1985). *See also Levan v. George*, 604 F.3d 366, 370 (7th Cir. 2010) (analysis of "separability" of legal and factual issues in following *Johnson*).

As pointed out by White, *infra*, the trial court rendered its decision to deny Wilkey's motion for summary judgment upon a fact-intensive analysis. While Wilkey appears to claim he based his appeal solely upon an issue of law, his own principal brief concedes or at least relies on disputed facts to support his legal issue challenge.

## STATEMENT OF THE ISSUES
## PRESENTED FOR REVIEW

With respect to Wilkey, White clarifies Wilkey's statement of issues

(ROA 17 at 11[2]), and further sets forth her own issue, listed as number 1:

1.    Does this Court have jurisdiction over Wilkey's interlocutory appeal?

NO.    Defendant Wilkey takes issue with the trial court's factual determinations, which are not subject to interlocutory appeal.

2.    Did the trial court err in denying summary judgment to Appellant on the ground of qualified immunity as it related to Appellee's claims of unreasonable seizure, when, during the period after the issuance of the citation, Appellee was no longer seized, and if she was seized, was it clearly established that a seizure was a constitutional violation of which a reasonable person would have known?

NO. Riley was seized, and the law was clearly established that an unlawful seizure was unconstitutional despite Wilkey's fact-based assertion that his seizure of Riley ended prior to the baptism.

3.    Did the trial court err in denying summary judgment to Appellant on the grounds of qualified immunity as it related to Appellee's First Amendment claim, when, at the time of the incident, it was not clearly established that an on-duty police officer baptizing a willing citizen was a constitutional violation?

NO. The facts reviewed by the trial court showed Wilkey was an on-duty deputy at the time of the baptism, and Riley's "willingness" is disputed as shown by the facts.

---

[2] Numbers 2 through 3 address Wilkey's issues he numbered as 1 through 2. (ROA 17 at 11). White has paraphrased Wilkey's issues.

## STATEMENT OF THE CASE

Riley initially brought her claims against Wilkey and his co-defendants in the Hamilton County Circuit Court, which they removed to the United States District Court for the Eastern District of Tennessee (hereinbefore and after, "trial court"). (Notice of Removal RE 1, Page ID # 1-3; Complaint RE 1-1, PageID #: 4-32).

Riley alleged that Wilkey and his co-defendant Jacob Goforth (identified in ¶ 13 of the Complaint as "individual Defendants") "acted under the color of their office and under color of law, statute, ordinance, regulation, custom, or usage of the County" and "acted by virtue of or under the color of their offices" as a deputy sheriff pursuant to TENN. CODE ANN. § 8-8-302 and in their official and individual capacities as employees for the County under TENN. CODE ANN. § 29-20-102 (Complaint RE 1-1, PageID #: 7, ¶ 13). Riley further alleged that Wilkey and Goforth acted under color of law in each allegation of a constitutional violation of her Complaint. (Complaint RE 1-1, PageID ##: 17 [¶ 96], 20 [¶ 111], 22 [¶ 124], and 25 [¶ 137].

In response to the allegations of the Complaint, Wilkey admitted to the allegations of ¶ 13. (Amended Answer RE 233, PageID #: 1901). Wilkey also admitted that he "acted under the color of law in the performance of his duties." (Amended Answer, RE 233, PageID ##: 1911, 1912, 1913, and 1914).

Sometime thereafter, Wilkey filed his Motion for Summary Judgment and claimed:

> … the *undisputed facts* demonstrated the claims must fail for several reasons:
>
> > 1.    Probable cause to conduct a search of Plaintiff existed as Riley admitted to possessing a marijuana roach. Wilkey performed a legal stop and search of Riley's vehicle. Riley was stopped for a window tint violation and during the stop, when asked if she had drugs in her car, Riley admitted to the presence of marijuana.
> >
> > 2.    After conducting a pat down of Riley and a search of the vehicle, Wilkey issued Riley a citation in lieu of arrest.
> >
> > 3.    Plaintiff claims Wilkey started talking to her about religion and Jesus, which he disputes. Wilkey and Riley then proceeded to Soddy Lake where he baptized her near the boat ramp.
> >
> > 4.    Defendant neither compelled nor forced Plaintiff to participate in the baptism.
> >
> > 5.    Plaintiff knew she did not have to participate in the baptism and was free to leave at any point.
> >
> > 6.    Defendant Wilkey is entitled to Qualified Immunity as his actions did not coerce Plaintiff and did not violate any recognized right and/or deprive Plaintiff of her liberty.

(Wilkey Motion for Summary Judgment RE 553, PageID # 4694-96) (emphasis added).

On March 29, 2023, the trial court entered a 31-page Memorandum Opinion ("Opinion") on Wilkey's Motion for Summary Judgment

(Memorandum Opinion RE 682, PageID #: 10029-59) wherein the trial court

granted in-part and denied in-part Wilkey's motion. (Id. at 10030). Germane

to White's reply is the trial court determined that Wilkey was *not* entitled to

summary judgment on the following claims of Riley:

1.   Unreasonable search claim and whether the right was
     clearly established. (Id. at 10038-41).

2.   Unreasonable seizure claim for purposes of baptism and
     whether the right was clearly established. (Id. at 10045-
     49).

3.   First Amendment violation-whether the baptism was
     unconstitutional and whether the right was clearly
     established. (Id. at 10049-54).

4.   State Assault and Battery claims. (Id. at 10056-57).

5.   State Intentional Infliction of Emotional Distress claims.
     (Id. at 10057-58).[2]

The trial court also noted that Wilkey did not dispute that he acted under

the color of law at the time of the incident. (Memorandum Opinion RE 682,

PageID #: 10036, fn 4) ("Only the first element is at issue in this case, as

Wilkey does not dispute that he was acting under color of law").

In its Opinion (Memorandum Opinion RE 682), the trial court

repeatedly identified multiple genuine issues of material facts, which the trial

---

[2] Wilkey did not address the state law claims as issues in his principal brief.
(ROA 17, at 11).

court decided when it denied Wilkey's Motion for Summary Judgment. White has incorporated the trial court's recitation of the facts from its Opinion to support her factual basis when drafting this Statement of the Case.

Additionally, the trial court adopted the factual findings from its denial of co-defendant Jacob Goforth's Motion for Summary Judgment. (Memorandum Opinion RE 682, PageID #: 10030, fn 2). Specifically, the trial court stated:

> The Court described the facts of this case in detail in a previous opinion. *No party has expressed any objection to the Court's summary of the facts.* Accordingly, the Court will continue to rely in part on the description of the facts outlined in its previous opinion.
>
> The Court also notes at the outset that, because the same facts underly Goforth's summary-judgment motions, the Court will, at times, draw from the law set forth in its ruling on Goforth's summary-judgment motion. However, the Court is cognizant of its obligation to separately assess each Defendant's role and takes care to individually analyze the constitutionality of Wilkey's actions in the present opinion.

(Id.) (emphasis added).

Although redundant but to ensure White does not omit any fact the trial court considered in its denial of Wilkey's Motion for Summary Judgment, White will reproduce in this Brief the factual findings of the trial court in Documents 692 and 492. Any internal citations to the trial court's record are

omitted; however, White will include the citations as necessary to give this Court fuller context of the source of trial court's findings.

**Findings of Fact by Trial Court – Document 692 (Wilkey)**

> Before the Court is Defendant Daniel Wilkey's motion for summary judgment as to the claims filed by Plaintiff Shandle Marie Riley. Riley's claims against Wilkey stem from a traffic stop initiated by Wilkey that led to him baptizing Riley in Soddy Lake. Shortly after the Court granted in part and denied in part codefendant Jacob Goforth's motion for summary judgment, Riley died. United States Magistrate Judge Christopher H. Steger subsequently substituted the Estate of Shandle Marie Riley, through its Administrator, Bailey White, as the party of interest in this case. Wilkey now seeks summary judgment on all of Riley's claims against him, arguing that he is entitled to qualified immunity because he did not violate any of Riley's constitutional rights, he was not negligent toward Riley, he did not assault or batter her, and because Riley cannot support essential elements of the intentional-infliction-of-emotional-distress claim.

(Memorandum Opinion RE 682, PageID #: 10029-30)[3].

> On February 6, 2019, around 9:15 p.m., Wilkey pulled Riley over in the driveway of her ex-mother-in-law Diane (King) Smith's home to visit her child. (*Wilkey Dashcam Video* at 21:15:24.). Wilkey approached Riley's driver-side window and asked her what she had in the car. (*Wilkey Dashcam Video* at 21:15:46–21:17:35.) Riley confessed that she had a marijuana roach in a cigarette pack in her car's center console, which Wilkey located.

(Memorandum Opinion RE 682, PageID #: 10030).

> Wilkey opened the door for Riley to exit the vehicle and instructed her to place her hands on its roof. (*Wilkey Dashcam*

---

[3] The *Wilkey Dashcam Video* was manually filed on 08/28/2023 (ROA 18).

*Video* at 21:17:37–21:18:13.)  Wilkey searched Riley's person for approximately twenty seconds, then handcuffed her.  (*Id.* at 21:17:55–21:18:10.)  Another on-duty deputy, Tyler McRae, arrived while Wilkey was handcuffing Riley.  (*Id.* at 21:17:55)  After briefly speaking with Riley, Wilkey searched her pockets and eventually directed her to wait at the front of his patrol car.  (*Id.* at 21:18:47–21:19:13.)  Riley testified that Wilkey inappropriately touched her crotch "[w]hen he was in [her] pockets."  (Doc. 625-1, at 29–30; Doc. 1-1, at 24–25; *Wilkey Dashcam Video* 21:19:09.).

(Memorandum Opinion RE 682, PageID #: 10030-31).

Wilkey searched Riley's vehicle while she waited near the patrol car.  (*Wilkey Dashcam Video* at 21:19:53–21:30:45.)  After doing so, Wilkey spoke with Riley at length before ultimately removing her handcuffs.  (*Id.* at 21:47:53–21:48:03.)  He then directed Riley to pull up her shirt and shake out her shirt and bra, which she did.  (*Id.* at 21:48:23–21:49:08.)  Riley testified that Wilkey "made [her] jump up and down with . . . [her] bra."  Though Wilkey did not find any additional contraband, Riley testified she was "pretty sure that [Wilkey] was going to try to find a way to put [her] in jail, one way or another."

(Memorandum Opinion RE 682, PageID #: 10031).

Wilkey and Riley next discussed religion.  They spoke for another thirty minutes, and McRae left sometime during this conversation.  (*Wilkey Dashcam Video* at 21:49:22–22:19:15.)  Riley testified that Wilkey asked her whether she had been baptized.  She responded with reservations about being "ready" for something like that. But, according to Riley's testimony, Wilkey told her "God was talking to him" and assured her that, if she got baptized, he would only write her a citation and she would be free to go about her business. According to Riley, Wilkey also indicated that he would speak at court on her behalf if she agreed. Riley decided to go along with this plan because she "[did not] want to go to jail[,]" and she would "much rather get baptized in the freezing cold water than go to [jail] . . . ."  She

also thought Wilkey was a godly man and he "saw something . . . in [her], that God talked to him"; she testified that "it felt good to believe that for a minute." When later asked whether Wilkey "gave [her] the option not to do this," Riley answered:

> What do you mean gave me the option? I mean it wasn't, it wasn't by gunpoint . . . or anything. . . . I don't know, like—I'm not sure he told me— I mean, . . . I don't know if those words [came] out. But I mean, I know that I didn't have to do it. I mean, I know that I'm a grown woman and I know I didn't have to do it[.]

(Memorandum Opinion RE 682, PageID #: 10031-32).

Upon Wilkey's suggestion, Riley went into Smith's house to get towels for the baptism. (*Wilkey Dashcam Video* at 22:19:15– 22:19:49.) Riley was only in the house for a couple minutes, where she spoke briefly to her son and asked Smith if she could borrow some towels. (*Wilkey Dashcam Video* at 22:19:49– 22:23:38) Smith asked why, and Riley responded, "I guess I'm fixing to get baptized." Smith asked her whether that was safe, and Riley replied "I don't know. We'll find out." After Riley emerged from the house with towels, Wilkey issued her a citation. (*Wilkey Dashcam Video* at 22:23:38–22:24:17.) Riley and Wilkey returned to their respective vehicles, and Riley followed Wilkey in her car for about twelve minutes to Soddy Lake. (*Wilkey Dashcam Video* at 22:24:21–22:36:59.) While driving to Soddy Lake, Wilkey called Goforth, another on-duty Hamilton County officer, and asked him to "meet [him] at Soddy Lake so he could video to ensure that Ms. Riley did not make any unfounded accusations."

(Memorandum Opinion RE 682, PageID #: 10032).

Wilkey arrived at Soddy Lake around 10:36 p.m. and waited in his car for several minutes. (*Wilkey Dashcam Video* at 22:36:59– 22:52:40.) Once Goforth arrived, Wilkey introduced Riley and Goforth to each other, stating that Riley wanted to be baptized. (*Id.* at 22:54:56–22:55:04.) In preparation for the baptism,

Wilkey told Riley, "I'm going to be honest with you, . . . I'm going to strip down to my skivvies, " but he asked Riley to keep her clothes on. (*Id.* at 22:55:11–22:55:21 (asking her to "bear with [him]").) Wilkey removed all his clothing except his underwear and t-shirt, and Riley remained fully clothed except for her feet. (*Goforth Cellphone Video* at 0:07–0:10.) Wilkey baptized Riley by quickly submerging her in the water while holding her with one hand on her back and the other hand on her front. (*Goforth Cellphone Video* at 0:49–1:36.)

(Memorandum Opinion RE 682, PageID #: 10032-33)[4].

Goforth filmed the baptism on his cellphone. (Doc. 553-2, at 13.) There is some dispute as to where Wilkey was touching Riley during the actual baptism:  Riley stated one of his arms was touching her breast (*id.* at 12, 15), but in the video Goforth took of the baptism, it appears that Wilkey was only holding her arm (*Goforth Cellphone Video* at 0:49–1:36). Wilkey and Riley were in the water for approximately one minute and twenty seconds. (*Id.* at 0:26–1:45.).

(Memorandum Opinion RE 682, PageID #: 10033).

Once out of the water, Riley and Wilkey hugged each other for roughly four seconds. (*Goforth Cellphone Video* at 1:58–2:02.) When asked why she had hugged Wilkey, Riley testified that she "was just trying to get the heck out of there," and that she left immediately without talking with Wilkey or Goforth. (Doc. 625-1, at 25–26.)  Riley stated that, at that point, "[she] knew [the baptism] had nothing to do with God [or] . . . with saving [her or] . . . with [anyone] being a good person.  It had something to do with power [and] control[.]" (*Id.* at 24.) At 11:00 p.m., Riley, Wilkey, and Goforth all walked back to their respective vehicles. (*Wilkey Dashcam Video* at 23:00:32–23:00:53.) There was some conversation and laughter before Riley departed, and Goforth and Wilkey continued talking after she left. (*Id.* at 23:00:58–23:07:25.)

---

[4] The *Goforth Cellphone Video* was manually filed on 08/28/2023  (ROA 18).

(Memorandum Opinion RE 682, PageID #: 10033).

> As a result of the incident, Riley testified that she quit her job
> due to "the way people were treating [her]." According to Riley,
> "[p]eople look at [her] different[ly] now because they feel like
> what happened to [her] is [her] fault and blame [her] because
> someone was trying to introduce God into [her] life." She also
> claims she has "lost any friend" she had in her life prior to the
> incident, has "a hard time having a conversation with anyone[,]"
> and "can barely hold a glass of water" or "get out of bed." Riley
> testified that the incident made it "very hard to function and do
> simple day to day activities, such as getting out of bed and getting
> dressed." Though Riley stated she did not see a doctor for the
> difficulties she was experiencing, she testified she at one point
> "check[ed] in to [a center for alcohol and drug abuse services]
> but had to check [herself] out after only 16 hours because it is a
> county government funded program and [her] trust issues caused
> [her] to not be able to stay there." As noted, Riley has since
> passed away.

(Memorandum Opinion RE 682, PageID #: 10033-34).

The trial court gave additional detailed analysis of the facts when

arriving at its decision:

> Genuine disputes of material fact exist as to whether Wilkey's
> search of Riley exceeded its permissible scope. Wilkey states he
> conducted a pat-down on Riley's person after she admitted to
> him she had a marijuana roach on her "to ensure she did not have
> any weapons." Despite noting the search constituted a "standard
> *Terry* pat down[,]" Wilkey also justifies his request for Riley to
> "shake out her bra" by declaring bras to be "common hiding
> place[s] for drugs and contraband." Review of the video
> confirms that Riley, taking direction from Wilkey and under
> watch of both Wilkey and McRae, lifted up her shirt and tugged
> at her bra for nearly a minute. (*Wilkey Dashcam Video* at
> 21:48:24–21:49:08.) *Though Riley was illuminated by the patrol
> car's headlights, Wilkey shone his flashlight on **her chest** while
> she complied with his instructions.* (*Id.* at 21:48:58.) Nothing in

11

the record suggests Wilkey suspected Riley was hiding a weapon in her shirt or undergarment; in fact, Wilkey and McRae had both been calmly conversing with Riley in close proximity and Wilkey had removed Riley's handcuffs prior to directing Riley to lift her shirt up and shake her bra out.  Considering a *Terry* pat-down serves to root out weapons—not contraband—a reasonable jury could find Wilkey's search exceeded the permissible scope of the *Terry* pat-down.  As a result, Riley has proffered evidence from which a reasonable jury could conclude that Wilkey's search of Riley's person violated her constitutional rights.

(Memorandum Opinion RE 682, PageID #: 10039-40) (emphasis added).

In this case, genuine issues of material fact exist as to whether a reasonable person in Riley's position would have felt free to leave, allowing a reasonable jury to find Riley was seized for purposes of the baptism.  Wilkey's discussion of religion and suggestion of a baptism immediately followed the execution of Riley's traffic stop, during which Wilkey handcuffed her for nearly two hours and confiscated illegal drugs in the presence of another on-duty officer. Riley has asserted Wilkey assured her that, if she got baptized, he would write her a citation instead of taking her to jail.  Riley testified that she agreed to the baptism because she "[did not] want to go to jail."  She also stated she was "pretty sure that [Wilkey] was going to try to find a way to put [her] in jail, one way or another" and that she would "much rather get baptized in the freezing cold water than go to [jail]."  Though the Court is *without the benefit of a clear recording* capturing Riley and Wilkey's conversations precipitating the baptism, the circumstances surrounding the incident, when viewed in a light favorable to Riley, suggest a reasonable person in Riley's position would not have felt free to "decline [Wilkey's] requests or otherwise terminate the encounter."

(Memorandum Opinion RE 682, PageID #: 10046) (emphasis added).

Because the facts, viewed in the light most favorable to Riley, support a finding that a reasonable person in Riley's position would not feel free to leave prior to the baptism's execution,

Wilkey is not entitled to summary judgment on the grounds that Riley was not seized for the purposes of the baptism.

(Memorandum Opinion RE 682, PageID #: 10047).

If a reasonable jury finds Riley was seized, it can certainly find that the seizure was unreasonable. No governmental interest is furthered by an on-duty law-enforcement officer's forced baptism of a private citizen. On the contrary, such an action serves to *undermine* the government's interest in protecting the free exercise of religion. If it is determined that Wilkey seized Riley for purposes of conducting the baptism, a reasonable jury could find that Riley's seizure for the purposes of the baptism violated her Fourth Amendment rights.

(Memorandum Opinion RE 682, PageID #: 10047-48) (emphasis by the trial court in original).

In this case, it was clearly established in 2019 that an on-duty law-enforcement officer violated the Fourth Amendment by forcing a private citizen to participate in a religious sacrament. Though no on-point case exists in the Sixth Circuit, intrusions upon an individual's liberty that cannot be justified by any legitimate governmental interest are clearly unreasonable. Wilkey's argument that the situation's novelty absolves him of responsibility is unavailing; the lack of factually similar cases does not automatically confer qualified immunity. ***In fact, the outlandishness of the situation—which is undoubtedly responsible for the dearth of factually-similar cases—should have clued Wilkey in to the illegality of his actions.*** Thus, if factual disputes are resolved in Riley's favor, a reasonable jury could find Wilkey violated clearly established law by seizing her for purposes of a baptism.

(Memorandum Opinion RE 682, PageID #: 10049) (emphasis added).

In this case, genuine disputes of material fact exist as to whether Riley was coerced into participating in the baptism. Though Wilkey insists Riley "cannot demonstrate her activity was coerced" because she stated she was a grown woman and knew

13

she did not have to participate, Riley testified that she agreed to the baptism because she "[did not] want to go to jail" and that she would "much rather get baptized in the freezing cold water than go to [jail]." Additionally, according to Riley, Wilkey indicated that he would speak at court on her behalf if she agreed to the baptism. If this factual dispute is resolved in Riley's favor, a reasonable jury could find Riley's receipt of a citation in lieu of arrest constitutes a benefit (or, rather, avoidance of a harsher punishment) conditioned on her participation in a baptism—a scenario that could amount to coerced participation in a formal religious exercise.

(Memorandum Opinion RE 682, PageID #: 10051-52).

Riley predicates her assault and battery claims against Wilkey on his "acts and omissions in regard to the search at the King residence" and testified that Wilkey inappropriately touched her crotch during this search "when he was in [her] pockets." (*Wilkey Dashcam Video* 21:19:09.) Riley also argues Wilkey did so intentionally. Though Wilkey denies any untoward touching, the dashcam video does not resolve this dispute, as it is unclear exactly where Wilkey's hands were at the time Riley claims he felt her crotch. If this factual dispute is resolved in Riley's favor, a reasonable jury could find that Wilkey both intended to cause offensive contact with Riley and that he realized that intention by inappropriately touching Riley's crotch. Accordingly, the Court will deny summary judgment as to Riley's assault and battery claims against Wilkey.

(Memorandum Opinion RE 682, PageID #: 10056-57).

Riley has testified that Wilkey performed a baptism against her will during the execution of a traffic stop. If true, a jury could find that these circumstances are "so conspicuously offensive as to rise to the required level of outrage." In her interrogatory responses, Riley described the impacts of the incident on her wellbeing: she testified she quit her job because of "the way people were treating [her]"; she claims she "lost any friend" she had in her life before the incident occurred, has "a hard time having a conversation with anyone," and "can barely hold a glass

14

of water" or "get out of bed" Though Riley did not see a doctor for the issues she was experiencing, she testified she "check[ed] in to [a center for alcohol and drug abuse services] but had to check [herself] out after only 16 hours because it is a county government funded program and [her] trust issues caused [her] to not be able to stay there." From these facts, a reasonable jury could find the harm Riley suffered as a result of the incident amounts to the level of "serious mental injury" required by Tennessee law. Accordingly, the Court denies summary judgment as to Riley's intentional infliction of emotional distress claim against Wilkey.

(Memorandum Opinion RE 682, PageID #: 10058-59).

### Findings of Fact of Trial Court – Document 492 (Goforth)

Wilkey searched Riley's vehicle while she waited near the patrol car. According to Riley, Wilkey "tore [her] car apart" searching for other contraband. After searching the vehicle and talking with her at length, Wilkey removed the handcuffs. He then directed Riley to pull up her shirt and shake out her shirt and bra, which she did. Wilkey did not find any additional contraband.

(Memorandum Opinion RE 492, PageID #: 3920)

That night, Goforth was also on patrol. Wilkey called Goforth while driving to Soddy Lake "and requested [his] presence at the Soddy Lake boat ramp to witness a baptism." Goforth believed Wilkey was baptizing someone who he knew personally. Goforth did not learn that Riley had been cited for a criminal offense until he arrived at the boat ramp. Goforth avers that he "asked [Wilkey] if he had thought about [baptizing Riley] in an effort to provoke reconsideration," but that Wilkey "wanted to proceed."

(Memorandum Opinion RE 492, PageID #: 3922).

Goforth filmed the baptism on his cellphone. Goforth avers that he did so "to protect all persons present and document the event." [Goforth] also stat[ed] that he "thought that making the video

15

would prevent Riley from claiming something happened which did not."

(Memorandum Opinion RE 492, PageID #: 3922) (alteration in original).

Furthermore, the trial court gave additional detailed analysis of the facts when arriving at its decision:

> When a suspected seizure is affected without the use of physical force, there must be both a show of authority from the officer and submission by the detainee. "[W]hat may amount to submission depends on what a person was doing before the show of authority[.]" The Supreme Court has noted that "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" can connote a seizure, even when the individual never attempted to leave. However, "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

(Memorandum Opinion RE 492, PageID #: 3929-30).

> Goforth argues that Riley was no longer seized when she arrived at the boat ramp for the baptism because she drove her own car to the lake and "was no longer physically restrained in any way." But genuine fact issues preclude summary judgment on this basis. Because of the absence of audio in the dashcam footage, the specifics of the conversation that led to the baptism are unclear. Although Goforth contends that, from his perspective, Riley freely consented to the baptism, Riley denies this. And taking the facts in the light most favorable to Riley, a reasonable person under the circumstances could have believed she was not free to leave until the baptism was completed. Riley had already been pulled over, handcuffed, and detained for nearly two hours by an on-duty, uniformed officer driving a marked police vehicle. She had surrendered marijuana she knew she was not legally

allowed to have. Riley also testified that she went along with the baptism at least in part because she did not want to go to jail. She further testified that Wilkey told her that, if she agreed to be baptized, "he'd give [her] a citation and [she] could go on about [her] business." Wilkey had also called and requested the presence of an additional on-duty officer for the baptism. It would not be unreasonable for a person facing these circumstances to believe that, if she attempted to leave before the baptism was over, she would have been prevented from doing so. Accordingly, Goforth is not entitled to summary judgment on the grounds that Riley was not seized for the purposes of the baptism.

(Memorandum Opinion RE 492, PageID #: 3930).

> Though Goforth's argument rests primarily on the absence of a seizure, the Court notes that only unreasonable seizures violate the Fourth Amendment. "[W]hat is 'unreasonable' varies from case to case, from type of seizure to type of seizure." To determine the reasonableness of an officer's conduct, the Court balances "the governmental interest which allegedly justifies official intrusion" against the intrusiveness of the seizure on the individual's rights.

(Memorandum Opinion RE 492, PageID #: 3931).

> If the facts demonstrate that Riley was seized, that seizure will have been unreasonable. No government interest is furthered by the baptism of a detainee by an on-duty law-enforcement officer. To the contrary, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that the government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith or tends to do so." "[I]f citizens are subjected to state- sponsored religious exercises, the State disavows its own duty to guard and respect that sphere of inviolable conscience and belief which is the mark of a free people." Baptism of detainees by law-enforcement officers runs directly counter to the government's substantial interest in guaranteeing the free exercise of religion without government intervention. Any seizure for the purpose of conducting a baptism intruded upon

17

Riley's liberty without furthering any government interest and
was therefore unreasonable.

(Memorandum Opinion RE 492, PageID #: 3931-32).

Based on the foregoing, the trial court conducted a detailed, fact-
intensive inquiry into the liability of Deputy Wilkey for violating Ms. Riley's
constitutional rights.  These factual findings, and the inferences to be drawn
from them, are not subject to dispute on interlocutory appeal per *Johnson v.
Jones*, 515 U.S. 304, 319-320 (1995).

## SUMMARY OF THE ARGUMENT

The trial court found triable questions of fact with respect to whether Wilkey was liable to Riley for his joint efforts with his former co-defendant Jacob Goforth to baptize her. Wilkey's arguments in this interlocutory appeal quibbles with the trial court's findings of fact, and such issues are not properly addressed in an interlocutory appeal. Wilkey does this despite his knowledge that the trial court found triable questions of fact with respect to clearly established law regarding the First and Fourth Amendments.

As to the state claims, the trial court rendered its decision to deny summary judgment on its factual findings. Still, Wilkey raises this appeal based upon the trial court's findings and thus is not proper for an interlocutory appeal.

While Wilkey attempts to argue that he was *not* acting under color of law (ROA 17 at 29-32), the trial court found that Wilkey did not dispute that he acted under color of law. Further, Wilkey *admitted* numerous times in his Amended Answer that he acted under color of law and thus this issue has been exclusively determined by the pleadings.

## ARGUMENT

**(I)    <u>JURISDICTION</u>: THE TRIAL COURT'S RULING IS NOT APPEALABLE SINCE IT WAS BASED ON MATERIAL FACTUAL DISPUTES.**

White avers that this Court has no jurisdiction to hear the instant appeal. The U.S. Supreme Court has held that an "instant appeal is not available … when the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). *See also Romo v. Largen*, 723 F.3d 670, 674 (6th Cir. 2013) ("a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial") (quoting *Johnson v. Jones*, 515 U.S. at 319-20).

As noted in the Statement of the Case, the trial court conducted a detailed, fact-intensive analysis of the evidence and held that there were genuine issues of material facts for a jury to decide.  For example, and while White will not repeat all of the factual disputes found by the trial court in the Statement of the Case, the trial court found that a "reasonable person in Riley's position would not feel free to leave, allowing a reasonable jury to find Riley was seized for purposes of the baptism" (Memorandum Opinion, RE 682, PageID #: 10046); that if a jury finds Riley was seized, it "can

20

certainly find that the seizure was unreasonable" as no "governmental interest is furthered by an on-duty law-enforcement officer's forced baptism of a private citizen" (Id. at 10046). In arriving at this conclusion, the trial court noted that a genuine dispute of material facts concerning whether Riley was coerced into the baptism existed by whether she would have faced harsher penalties had she refused the baptism. (Id. at 10052). These matters are not an abstract issue of law. Rather these are cold hard facts that a jury must decide.

Additionally, Wilkey himself based his arguments in his principal brief upon factual issues reviewed and analyzed by the trial court and in so doing appears that he is attempting to persuade this Court to believe his version of the facts. The Sixth Circuit has held that whenever "the defendants' appeal attempts to persuade us to believe their version of the facts, we must dismiss the appeal." *Berryman v. Rieger*, 150 F.3d 561, 565 (6th Cir. 1998). "[I]f what is at issue in the appeal is nothing more than 'whether the evidence could support a finding that particular conduct occurred,' there is no appellate jurisdiction." *Id.* at 563 (quoting, *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). This Honorable Court "ha[s] learned by experience that defendants sometimes attempt simply to protract the litigation and manipulate the fact-law distinction drawn by *Mitchell*, *Johnson*, and *Behrens* to create the appearance of jurisdiction." *Berryman* at 564 (referencing

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)). But "[o]nce a defendant's argument drifts from the purely legal into the factual realm and begins contesting what really happened, [appellate] jurisdiction ends and the case should proceed to trial." *Berryman* at 564-65.

Just like the defendants in *Berryman*, Wilkey constructed his interlocutory appeal on little more than "contesting what really happened" and attack the trial court's reasoning and factual determinations. Appellate "jurisdiction does not extend to appeals that merely quibble with the district court's reading of the factual record." *Leary v. Livingston Cnty.*, 528 F.3d 438, 441 (6th Cir. 2008).

The trial court went into great detail how Wilkey's accounts were contradicted by Riley in her deposition testimony. Wilkey bemoans *throughout* his principal brief *his view of the facts* while ignoring the trial court must take the facts in the light most favorable to the non-moving party.[5] For example, Wilkey placed in a footnote to his principal brief *his view* of facts that he claims: "is helpful *in seeing* just how voluntary *Riley thought* this

---

[5] A Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

interaction was." (ROA-17, at 22-23, fn 3) (emphasis added). He then went on to rehash facts from Riley's deposition. (Id.).

Additionally, and incredibly, Wilkey claims *what he believed* about the facts that *"justified" his thinking* "by [Wilkey] (1) engaging in uplifting small talk with Riley after issuing her a citation in lieu of arrest, and (2) by agreeing to baptize her after a long conversation *aimed at encouraging and inspiring her,* he had terminated the seizure… ." (ROA-17, at 25) (alteration in original) (emphasis added). Such a claim is at best an assertion of credibility[6]. That subtle but telling assertion only makes it "now obvious that their appeal boils down to credibility determinations we cannot make." *Berryman* at 564. Regardless, this Court does not have the jurisdiction to hear this appeal.

**(II)** <u>**WILKEY'S COLOR OF LAW ARGUMENT**</u>**: Wilkey has waived this issue since he raised it for the first time in this Court, and he has admitted in his Amended Answer that he acted under color of law.**

Wilkey has asserted that he was not acting under color of law when he baptized Riley "because she voluntarily engaged in the baptism… ." (ROA-17, at 27). Wilkey's assertion that he was not acting under color of law comprised *nearly eight whole pages* of his principal brief to support his claim

---

[6] Indeed, issues of credibility are solely for the trier of fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); and *Miller v. Sanilac Cty.*, 606 F.3d 240, 248-49 (6th Cir. 2010).

that his forced baptism was not a violation of the Establishment Clause. (ROA-17, at 27-34). However, and as noted by the trial court, Wilkey did not raise this issue in his Motion for Summary Judgment and it was not disputed by the pleadings.

Initially, "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Fifth Third Bank v. Lincoln Fin. Sec. Corp.*, 453 F. App'x 589, 595 (6th Cir. 2011) (quoting, *Singleton v. Wulff,* 428 U.S. 106, 120 (1976)); (citing, *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 552 (6th Cir. 2008)). There are exceptions to this general rule:

> Certain exceptions apply, however, and this court has deviated from the general rule in exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice. This circuit's leading case on the matter is *Pinney Dock & Transport Co. v. Penn Central Corporation,* 838 F.2d 1445 (6th Cir.1988). In *Pinney,* this court explained that the rule is not jurisdictional, but rather is a rule of procedure under which exceptions are permissible in limited circumstances and are left to the discretion of the courts of appeals based on the facts of individual cases.

*Fifth Third Bank*, at 595-96. (internal citations omitted)
In deciding whether to exercise its discretion to hear a matter raised for the first time on appeal, this court is guided by the following factors:

> 1) whether  the issue newly raised on appeal is  a question of law, or whether it requires or necessitates a *determination of facts*; 2) whether the proper resolution of the new issue is clear beyond

24

> doubt; 3) whether failure to take up the issue for
> the first time on appeal will result in a miscarriage
> of justice or a denial of substantial justice; and 4)
> the parties' right under our judicial system to have
> the issues in their suit considered by both a district
> judge and an appellate court.

*Fifth Third Bank*, at 596 (emphasis added).

As to the first and second factors, an interlocutory appeal does not allow a rehash of facts reviewed by the trial court. As to the third and fourth factors, judicial estoppel has impact.

"Rooted in equity, the rule of judicial estoppel 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Middlebrooks v. Parker*, 22 F.4th 621, 628 (6th Cir. 2022) (internal citations omitted).

> [J]udicial estoppel's equitable roots mean these factors are not
> 'inflexible prerequisites or an exhaustive formula' for
> determining the doctrine's limits. Instead, we apply the doctrine
> with the understanding that its purpose is 'to protect the integrity
> of the judicial process.' In other words, judicial estoppel aims to
> stop parties from 'playing fast and loose with the courts.'

*Id.* (internal citations omitted) (alteration in original).

Wilkey *admitted* numerous times in his Amended Answer in the trial court that he acted under color of law. By raising for the first time in this appeal that he did not act under color of law, he has taken a contrary position. As such, he has waived any such argument by admitting that he acted under

of color of law in his answer, and thus is estopped from asserting this argument now.

**(III)    STANDARD OF REVIEW: IF THE COURT ACCEPTS JURISDICTION, THE STANDARD OF REVIEW IS *DE NOVO*.**

If this Court accepts jurisdiction, "this Court conducts *de novo* review of the district court's denial of a defendant's motion for summary judgment on the basis of qualified immunity.…" *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004) (citing *Chappel v. Montgomery Country Fire Protection Dist. No. 1*, 131 F.3d 564, 573 (6th Cir. 1997)).

The Court of Appeals reviews summary judgment motions "using the same Rule 56(c) standard as the district court." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). Summary judgment is never appropriate unless "the evidence … is so one-sided that one party must prevail as a matter of law." *Colvin v. Caruso*, 605 F.3d 282, 288-89 (6th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court "must draw all reasonable inferences in favor of the nonmoving party," which is White. *Colvin* at 288, (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A qualified immunity defense boils down to the question of whether the Officers "violated a 'clearly established' right." *Camreta v. Greene*, 131 S.Ct. 2020, 2031 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). The first prong of qualified immunity is whether "the official violated a statutory or constitutional right" (in this case, the right to be free from unlawful seizure and freedom from state sanctioned religion); and the second prong is whether "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011). The Court need not address these two elements in any particular order. *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009)).

When determining whether a constitutional right was violated, "[t]he question we must ask is whether, under the ***totality of the circumstances***, the officer's actions were objectively reasonable." *Fox v. DeSoto*, 489 F.3d 227, 236-37 (6th Cir. 2007), (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)) (emphasis added).

If the officer's actions were not reasonable under the circumstances, then the question becomes whether the officer should have known that, at the time, the law is "clearly established" for purposes of denying immunity if the "contours of the right" at issue were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, if a reasonable officer would have known not to do what Goforth and Wilkey

did, then Wilkey is not entitled to immunity. *See Martin v. City of Broadview Heights*, 712 F.3d 951, 960 (6th Cir. 2013) (citing *Anderson* at 640)).

**(IV)** <u>CONSTITUTIONAL VIOLATIONS</u>: WILKEY VIOLATED RILEY'S RIGHTS UNDER THE FIRST AMENDMENT AND THE FOURTH AMENDMENT (SEIZED FOR PURPOSE OF BAPTISM).

In his effort to avoid liability under § 1983 for violation of Riley's rights under the Establishment Clause and under the Fourth Amendment, Wilkey avers that he was not acting under color of law since he was "pursing his own personal and private interest in conducting the baptism." (ROA 17, at 17). He then made a fact-based claim that Riley "willingly volunteered for the baptism." (Id.). Wilkey then claimed that "even if" he violated Riley's rights, there was no case "squarely on point governing whether an on-duty police officer could baptize a 'willing citizen' after he issued her a citation for marijuana." (Id.).

White has pointed out that Wilkey not only waived whether he acted under color of law, he is estopped from claiming he acted as a private citizen as he admitted the opposite in his answer. However, White will address his claim that there was no clearly established law to have placed him on notice.

### a. *Clearly Established Law.*

A right is clearly established when, "at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable

official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Despite this general rule, "[i]t is not necessary, . . . 'that the very action in question has previously been held unlawful.'"  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67  (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also id.* at 1867 ("[A]n officer might lose qualified immunity even if there is no reported case 'directly on point.'" (citations omitted)).  That is, "there need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts," as long as the defendants had "fair warning" that their conduct violated the plaintiff's rights.  *Goodwin v. City of Painsville*, 781 F.3d 314, 325 (6th Cir. 2015) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)).

Indeed, "[s]ome violations of constitutional rights are so obvious that a 'materially similar case' is not required for the right to be clearly established." *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013). *See also See Campbell v. City of Springboro, Ohio*, 700 F3d 779, 788 (6th Cir. 2012 ("this is not to say that an official action is protect by qualified immunity unless the very action is question has been previously held unlawful … ."); and *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (officers "can still be on notice that their conduct violates established law even in novel factual circumstances").

### b.  Clearly Established Law and First Amendment Violation.

The Supreme Court's recent decision in *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022) dispensed with the former *Lemon* Test and instructed that "the Establishment Clause [] be interpreted by reference to historical practices and understandings." *Id.* at 2428 (alteration in original). The *Kennedy* Court elucidated its view of a historically sensitive understanding of the Establishment Clause noting that a government may not "coerce anyone to attend church" nor force its citizens to engage in a "formal religious exercise." *See Id.* at 2429. (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952); *Lee v. Weisman*, 505 U.S. 577, 589 (1992); *see also Smith v. Jefferson Cnty. Bd. of Sch. Com'rs*, 788 F.3d 580, 589 (6ᵗʰ Cir. 2015) ("The Supreme Court has made clear that the state endorses religion when it coerces participation in religious activity").

In the instant appeal, Wilkey admitted that he acted under color of law when he baptized Riley. Riley testified that she agreed to the baptism because she "[did not] want to go to jail" and that she would "much rather get baptized in the freezing cold water than go to [jail]." (Memorandum Opinion, RE 682, PageID #: 10051). While Wilkey stripped down to his underwear to conduct the baptism, his removal of his uniform did not mean he was no longer acting under color of law as a uniformed, on-duty police officer.

Although Wilkey insisted that Riley "cannot demonstrate her activity was coerced" because she was a "her own woman" and knew she did not have to participate in the baptism and was thus free to leave (Memorandum RE 554, at PageID #: 4791), such an argument requires this Court to *not* consider the facts in the light most favorable to Riley as did the trial court. Additionally, the trial court, while quoting a decision from the First Circuit, found the facts established that the unconstitutional nature of Wilkey's conduct was "so patently evident – that no particular case – and certainly not one directly on point – need to have existed to put a reasonable officer on notice of its unconstitutionality." (Memorandum Opinion RE 682, PageID #: 10053-54; quoting *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 47 (1st Cir. 2016)).

### c. *Clearly Established Law and the Fourth Amendment Violation (Seizure for Purpose of Baptism)*

In the present matter, Riley has not challenged Wilkey's seizure as one based upon excessive force.[7] When a suspected seizure is affected without the use of physical force, there must be both a show of authority from the officer and submission by the detainee. *See United States v. Ward*, 756F. App'x 560,

---

[7] The trial court focused its analysis on the issue of whether Wilkey seized Riley's person for purpose of the baptism. (Memorandum Opinion RE 682, PageID #: 10045, fn 11).

564 (6th Cir. 2018) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

"[W]hat may amount to submission depends on what a person was doing before the show of authority[.]" *Brendlin*, 551 U.S. at 262 ("[A] fleeing man is not seized until he is physically overpowered but one sitting in a chair may submit to authority by not getting up to run away."). The Supreme Court has noted that "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" can connote a seizure, even when the individual never attempted to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (citations omitted).

Wilkey held Riley at the King residence, in handcuffs, for nearly two hours and found illegal drugs while in the presence of McRae. Riley claims that during this two-hour seizure (to be discussed further) Wilkey assured Riley that, if she got baptized, he would write her a citation instead of taking her to jail. Riley preferred getting baptized in the cold water rather than go to jail. To be sure, Riley stated she was "pretty sure that [Wilkey] was going to try to find a way to put [her] in jail, one way or another" and that she would "much rather get baptized in the freezing cold water than go to [jail]." (Memorandum Opinion RE 682, PageID #: 10046).

When she got to the lake, she was met with another police officer (co-defendant Goforth). As the trial court determined:

> Once out of the water, Riley and Wilkey hugged each other for roughly four seconds. (*Goforth Cellphone Video* at 1:58–2:02.) When asked why she had hugged Wilkey, Riley testified that she "was just trying to get the heck out of there," and that she left immediately without talking with Wilkey or Goforth. (Doc. 625-1, at 25–26.) Riley stated that, at that point, "[she] knew [the baptism] had nothing to do with God [or] . . . with saving [her or] . . . with [anyone] being a good person. It had something to do with power [and] control[.]" (*Id.* at 24.) At 11:00 p.m., Riley, Wilkey, and Goforth all walked back to their respective vehicles. (*Wilkey Dashcam Video* at 23:00:32–23:00:53.) There was some conversation and laughter before Riley departed, and Goforth and Wilkey continued talking after she left. (*Id.* at 23:00:58–23:07:25.)

(Memorandum Opinion RE 682, PageID #: 10033).

Given the facts in the best light for Riley, a jury could find that Riley had to do whatever she needed to do to get away from Wilkey. Much like a victim in the clutches of her captor, she did what she had to do to survive the encounter.

**(V)    CONSTITUTIONAL VIOLATIONS: WILKEY VIOLATED RILEY'S RIGHTS UNDER THE FOURTH AMENDMENT – UNREASONABLE SEARCH OF RILEY'S PERSON.**

Absent a warrant, a search is *per se* unreasonable under the Fourth Amendment absent a specifically established and well-delineated exception. *See Campbell v. Mack*, 777 F. App'x 122, 131 (6th Cir. 2019). In its opinion, the trial court stated:

In his motion, Wilkey relies solely on one such exception known as a *Terry* frisk—a pat-down of an individual's outer clothing when the individual's conduct leads an officer to reasonably suspect she is "armed and presently dangerous to the officer or to others." *Terry v. Ohio*, 392 U.S. 1, 24 (1968). The scope of the pat-down must be "confined . . . to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* at 29. The purpose of the search is not to discover contraband, "but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

(Memorandum Opinion RE 682, PageID #: 10039).

Wilkey's dashcam video reveals the following actions of Wilkey[8]:

Wilkey comes to talk to Riley 21:38. Wilkey removes cuffs from Riley 21:47:58.

Riley lifts shirt past belly 21:48:24 and runs fingers around band of bra and shirt then proceeds to shake bra vigorously numerous times until 21:49:09 – **approx. 1 min**. During this time Riley, while under the gaze of McRae and Wilkey, does the following:

> 21:48:27 raises her shirt past belly while looking in the direction of Wilkey;
>
> 21:48:28 shakes her shirt and the lower wire of bra out excessively;
>
> 21:48:53-21:49:07 pinches the middle of her bra and shakes her bra aggressively;
>
> 21:48:58 Wilkey shines his flashlight on Riley;
>
> 21:49:08 stops shaking her clothes and pulls her shirt down.

---

[8] Wilkey Dashcam Video. RE 553-1, at PageID #: 4698.

34

The trial court stated its factual findings that followed the dashcam footage and its conclusion as to the effect of the video:

> Genuine disputes of material fact exist as to whether Wilkey's search of Riley exceeded its permissible scope. Wilkey states he conducted a pat-down on Riley's person after she admitted to him she had a marijuana roach on her "to ensure she did not have any weapons." Despite noting the search constituted a "standard *Terry* pat down[,]" Wilkey also justifies his request for Riley to "shake out her bra" by declaring bras to be "common hiding place[s] for drugs and contraband."

> Review of the video confirms that Riley, taking direction from Wilkey and under watch of both Wilkey and McRae, lifted up her shirt and  tugged at her bra for nearly a minute. (*Wilkey Dashcam Video* at 21:48:24–21:49:08.) *Though Riley was illuminated by the patrol car's headlights, Wilkey shone his flashlight on **her chest** while she complied with his instructions.* (*Id.* at 21:48:58.)

> Nothing in the record suggests Wilkey suspected Riley was hiding a weapon in her shirt or undergarment; in fact, Wilkey and McRae had both been calmly conversing with Riley in close proximity and Wilkey had removed Riley's handcuffs prior to directing Riley to lift her shirt up and shake her bra out. Considering a *Terry* pat-down serves to root out weapons—not contraband—a reasonable jury could find Wilkey's search exceeded the permissible scope of the *Terry* pat-down.  As a result, Riley has proffered evidence from which a reasonable jury could conclude that Wilkey's search of Riley's person violated her constitutional rights.

(Memorandum Opinion RE 682, PageID #: 10039-40) (emphasis added).

Furthermore, the right to be free from an unreasonable search of one's person has been clearly established for a long time[9]:

> "There is no equivocation among the precedents on the purpose of a pat-down. Case law is very clear that '*Terry* . . . forbids searching for anything other than weapons.'" *Hayes v. Dye*, No. CIV 2008-165, 2010 WL 3515578, at *10 (E.D. Ky. Sept. 2, 2010) (alteration in original) (citing *Strahan*, 984 F.2d at 158 (6th Cir. 1993)).

(Id. at 10040).

As such, it is clear that Deputy Wilkey exceeded the proper bounds of a valid Terry stop and search when he prolonged the search of Riley for almost two hours and engage in extensive searches far outside the realm of a proper Terry search.

---

[9] The United States Supreme Court decided *Terry v. Ohio* in 1968.

## CONCLUSION

Wilkey's appeal is nothing more than a disagreement over the trial court's findings of fact and an argument on credibility. Thus, this Court does not have jurisdiction over this appeal. Notwithstanding White's assertions as to jurisdiction, the video evidence is overwhelming. It shows Wilkey engaged in a bizarre and outlandish act of baptism *while he was on duty*. Although he claims that he was (in essence) "off the clock" when he dunked Riley into the cold waters of Soddy Lake, he was still in uniform (until he stripped to his undies); operated a police car; and acted in concert with one, if not two armed and on-duty police officers.

Additionally, the law was clear that he cannot coerce anyone to engage in religious practice. If anything, Riley took the veneer of willful cooperation with Wilkey's to appease Wilkey and thus "get the heck out of there," and that is what the trial court found.

Most importantly, Wilkey relied heavily on his claims that he was not acting under the color of law when he seized and baptized Riley. Yet, he ignored that he *admitted* in his Amended Answer that he *did act under color of law*. He also waived this same issue in his Motion for Summary Judgment at the trial court level.

White moves this Court to dismiss the appeal, or to affirm the trial court's ruling, and to tax costs upon Wilkey.

Respectfully submitted,

/s/ Robin Ruben Flores
        Robin Ruben Flores (TN BPR 20751)
        4110-A Brainerd Road
        Chattanooga, Tennessee 37411
        Telephone: (423) 267-1575
        Facsimile: (423) 267-2703
        Email: robin@robinfloreslaw.com


/s/ Andrew C. Clarke
        Andrew C. Clarke (TN BPR 15409)
        One Commerce Square, Suite 1700
        Memphis, Tennessee 38103
        Telephone: (901) 5231222
        Facsimile: (901) 523-1999
        Email: aclarke@cochranfirmmdisouth.com

*Attorneys for Bailey White*

38

## **CERTIFICATE OF SERVICE**

In compliance with FRAP Rule 25 and L.R. 25 I hereby certify that on this 6th day of November, 2023, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit this Brief of the Appellee, and further certify that opposing counsel will be notified of this filing through the Notice of Docket Activity generated by this electronic filing.

/s/ Robin Ruben Flores
Robin Ruben Flores (TN BPR 20751)
4110-A Brainerd Road
Chattanooga, Tennessee 37411
Telephone: (423) 267-1575
Facsimile: (423) 267-2703
Email: robin@robinfloreslaw.com

/s/ Andrew C. Clarke
Andrew C. Clarke (TN BPR 15409)
One Commerce Square, Suite 1700
Memphis, Tennessee 38103
Telephone: (901) 5231222
Facsimile: (901) 523-1999
Email: aclarke@cochranfirmmdisouth.com

*Attorneys for Bailey White*

Counsel Served
James Exum, III
CHAMBLISS, BAHNER & STOPHEL
605 Chestnut Street
Suite 1700
Chattanooga, TN 37450
423-756-3000

## **CERTIFICATE  OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7). The foregoing brief contains 9,664 words of Times New Roman (14 point) proportional type. The word processing software used to prepare this brief was Microsoft Word.

/s/ Robin Ruben Flores
   Robin Ruben Flores (TN BPR 20751)
   4110-A Brainerd Road
   Chattanooga, Tennessee 37411
   Telephone: (423) 267-1575
   Facsimile: (423) 267-2703
   Email: robin@robinfloreslaw.com


/s/ Andrew C. Clarke
   Andrew C. Clarke (TN BPR 15409)
   One Commerce Square, Suite 1700
   Memphis, Tennessee 38103
   Telephone: (901) 5231222
   Facsimile: (901) 523-1999
   Email: aclarke@cochranfirmmdisouth.com

   *Attorneys for Bailey White*

## <u>DESIGNATED CONTENTS</u>

Pursuant to Sixth Circuit Rule 11(b), the Appellee hereby designates the following filings in the district court's record:

| <u>Description of Item</u> | <u>Record Entry</u> | <u>PAGE ID #s</u> |
|---|---|---|
| Notice of Removal | RE 1 | 1-3 |
| Complaint | RE 1-1 | 4-32 |
| Amended Answer | RE 233 | 1901, 1911-14 |
| Memorandum Opinion | RE 492 | 3920, 3931-32 |
| Suggestion of Death | RE 503 | 4039-40 |
| Wilkey Motion for Summary Judgment | RE 553 | 4694-96 |
| Wilkey Dashcam Video | RE 553-1 | 4698 |
| Videotaped Deposition | RE 553-2 | 4711 |
| Memorandum | RE 554 | 4791 |
| Order | RE 578 | 5880 |
| Memorandum Opinion | RE 682 | 10029-59 |